THOMAS CANNING CO. v. PERE MARQUETTE RAILWAY CO.

1. APPEAL AND ERROR—PLEADING—VARIANCE — SURPRISE — HARMLESS ERROR.

In an action by the consignee of a car load of beans against a railroad company for alleged damage to said beans by reason of the leaky condition of the car after arrival at destination, where the declaration counted on defendant's liability as a common carrier, but on the trial and in his opening statement plaintiff's counsel conceded that defendant's liability was as a warehouseman, and defendant, whose defense was that its liability was that of a warehouseman, makes no claim of surprise, the action of the trial court in overruling defendant's motion for a directed

verdict because of the variance between the declaration and the proofs, *held*, not reversible error.

2. SAME—AMENDMENTS.

Since the declaration might have been amended in the court below, and an amendment could be permitted in this court to save the judgment, this court will decline to reverse the judgment in favor of plaintiff because of the variance.

3. BAILMENTS—LIABILITY OF BAILEE—BURDEN OF PROOF.

In an action against a railroad company for damage to beans, where the damage occurred after arrival at destination, and its liability is conceded to be that of a warehouseman, an instruction by the trial judge that the burden of proof was upon the plaintiff to establish its case, and every element of it, including defendant's negligence, by a fair preponderance of the evidence, but that, when plaintiff had shown that the beans were in good condition when delivered and upon arrival at destination, then the burden of proof was placed upon defendant to show that they were not damaged because of any want of care on its part, *held*, correct.

4. SAME—"MODERN RULE" AS TO BAILEE'S LIABILITY.

The tendency of the decisions of this court leads to the adoption of the so-called "modern rule," that, where goods are delivered to the bailee in good condition, and are returned injured or in defective condition, or not at all, a presumption of negligence on the part of the bailee at once arises, and the burden is upon him, if he would exonerate himself, to show due care.

Error to Kent; McDonald (John S.), J.   Submitted June 8, 1920.   (Docket No. 9.)   Decided July 20, 1920.

Case by the Thomas Canning Company against the Pere Marquette Railway Company for damages to certain beans.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Norris, McPherson, Harrington & Waer* (*Shields, Merriam & Sleeper*, of counsel), for appellant.

*Colin P. Campbell*, for appellee.

FELLOWS, J.   A car load of beans was shipped to

plaintiff from Bay City May 14, 1917, over defendant's road. It arrived in Grand Rapids between May 17th and 20th. The beans were inspected before shipment and after their arrival in Grand Rapids and on both occasions were found to be in good, sound and dry condition. The car was also inspected both before the shipment and after its arrival in Grand Rapids and was found to be in good condition. Plaintiff left the beans in the car until July 8th when a considerable portion of them was found to be water-soaked and damaged. Plaintiff was charged and paid the usual demurrage charges. The plaintiff's testimony tended to show that when it went to take possession of the beans, the roof of the car was leaking as were the ends and sides. This was denied by the defendant. In this action brought to recover its damages plaintiff counted on defendant's liability as a common carrier. Defendant by way of notice under its plea of the general issue insisted that its liability must be measured by that of a warehouseman rather than that of a common carrier. Upon the trial plaintiff's counsel conceded defendant's liability was as a warehouseman and so stated in his opening statement. Its testimony was not objected to, there was no claim of surprise and not until the proofs were closed was any question made upon the declaration. At that time defendant moved for a directed verdict on the ground that the declaration having counted on liability as a common carrier, recovery could not be had as a warehouseman. This motion, which was overruled, presents the first question in the case. We are not impressed that there was reversible error in the ruling. The defendant received the beans as a common carrier. Its liability under the facts was reduced to that of a warehouseman; its defense was that its liability was only that of a warehouseman; it could not have been surprised, and its counsel did not claim surprise

when plaintiff admitted the reduction of liability to that of a warehouseman. Defendant's counsel made no objection to the admission of plaintiff's testimony. The declaration might then have been amended, and we could permit an amendment here to save the judgment. Under these circumstances we decline to reverse this judgment for the variance between the declaration and the proofs.

The important question in the case grows out of defendant's claim that the court erroneously instructed the jury as to the burden of proof and erroneously refused to give its request on the subject. The charge complained of is as follows:

"In this case the burden of proof is upon the plaintiff to establish its case and every element of it by a fair preponderance of the evidence. The burden of proof is upon the plaintiff to show that the defendant was negligent. When, however, the plaintiff has shown that the beans were in good condition when they were delivered for shipment in Bay City and were in good condition when they arrived in Grand Rapids, then the burden of proof is placed upon the defendant to show that the beans were not damaged because of any want of care on its part."

The claim of defendant's counsel appears in its sixth request which was as follows:

"The court instructs you that where liability is sought to be imposed on the carrier as warehouseman, the burden of proof is on the plaintiff to show that the carrier was guilty of negligence in the handling of the shipment. With reference to the bean car, therefore, the court instructs you that the plaintiff in this case cannot recover, unless it establishes by a preponderance of the evidence that the railroad company was guilty of negligence in the handling of the car after its arrival at Grand Rapids."

It will be noted that the trial judge very clearly stated that the burden was upon the plaintiff to establish every element of its case, to establish defendant's

negligence, but he also stated that upon proof that the beans were in good condition when received by the defendant at Bay City and upon arrival at Grand Rapids, the burden was upon defendant to negative its want of care. It should be borne in mind that we are not here dealing with a loss occasioned by an accidental fire or explosion, of unexplained loss, of leakage or theft. It is probably true that this court has not in express language gone as far as we are asked to go in this case to sustain this judgment, and it is probably true that the rule of the Federal courts is as contended by defendant. *Southern Railway Co.* v. *Prescott*, 240 U. S. 632 (36 Sup. Ct. Rep. 469); *United Metals Selling Co.* v. *Pryor*, 155 C. C. A. 621, 243 Fed. 91; *Strauss* v. *Wilson*, 17 Fed. 701. It is likewise true that there is much of authority to sustain defendant's contention. Our problem, however, is to determine the tendency of our own holdings, the weight and persuasive force of the authorities from other States, in order that we may correctly solve the question before us. The defendant's liability is that of a warehouseman, the relations those of bailment, the plaintiff being the bailor, the defendant the bailee.

Let us first consider the holdings of this court. In the early case of *Beller* v. *Schultz*, 44 Mich. 529, the plaintiff, an employee of defendant, loaned him a flag and helped him to hoist it. It was damaged by a hailstorm. It was held that the plaintiff could not recover without proof that defendant failed to use due care. But the subject of the bailment in that case, a flag, was an article designed for exposure to weather conditions and plaintiff assisted in hoisting it and in thus exposing it to damage by the elements. The case is not persuasive on the question here involved.

In *Knights* v. *Piella*, 111 Mich. 9 (66 Am. St. Rep. 375), the loss was occasioned by theft. It was said by Mr. Justice HOOKER, speaking for the court:

"Upon this record, the defendant has established the fact and circumstances of the theft, without contradiction. There is no presumption of negligence from the mere fact of the loss or theft, and while there is much reason for the rule, adhered to in many States, that the defendant has the burden of proving the fact of loss, it does not necessarily follow that a presumption of negligence arises; and, if the facts shown in connection therewith do not fail to excuse, the *onus* is on the plaintiffs to shake defendant's exculpation. This does not deny the proposition that when the bailment is proved, and a refusal to deliver is established, the plaintiff has made out a *prima facie* case, and the inference of wrong by the defendant follows, or that it is then for the defendant to explain the loss and exonerate himself, which he may do by showing circumstances which *prima facie* excuse the failure to deliver. To this extent, and in this sense, a burden rests upon the defendant; but, if this question of fact becomes a disputed one, the evidence of the plaintiff must preponderate; and if the language of the charge, viewed abstractly, extends further, it cannot be said to have prejudiced the plaintiffs, under the established facts, the disputed question in this connection being whether or not the care exercised was equal to that to be expected from ordinarily prudent persons under similar conditions and circumstances."

In *Baehr* v. *Downey*, 133 Mich. 163 (103 Am. St. Rep. 444), Mr. Justice GRANT, who wrote the opinion, entertained the view that defendant's liability was the strict one of an innkeeper. In this view the majority of the court did not concur. In determining the case in accordance with the view of the majority of the court, and with the concurrence of the entire bench, he said:

"My Brethren do not agree with me that the strict liability of innkeeper attached to the defendants. They are of the opinion that that relation ceased to exist, and that the defendants were ordinary bailees of the property. Under these circumstances, plaintiffs made out a *prima facie* case by showing the property in the defendants' possession, and refusal or neglect to re-

turn on demand. The *onus* of exoneration was then upon the defendants. 3 Am. & Eng. Enc. Law (2d Ed.), p. 750. The rule as there stated is that, when the chattels are not returned at all, the law presumes negligence, and casts upon the bailee the *onus* of showing he was not negligent. This, undoubtedly, is the more modern and reasonable rule."

In *Wallace* v. *Railway Co.*, 176 Mich. 128 (Ann. Cas. 1915B, 631), the liability sought to be enforced was that of a common carrier; the defense was that the loss was occasioned by an act of God; considering the question of whether the verdict was against the weight of the evidence, it was said:

"The contention that these damages were so caused is a matter of affirmative defense, the burden of proof to establish which being upon the defendant, and, like the affirmative of any issue of fact, it is required to be established by a preponderance of the evidence."

See, also, *Donlin* v. *McQuade*, 61 Mich. 275; *Fraam* v. *Railway Co.*, 161 Mich. 556 (29 L. R. A. [N. S.] 834, 21 Ann. Cas. 96). An examination of the cases considered and cited demonstrates the tendency of this court to adopt what is called by textwriters and courts the modern rule. In 6 C. J. p. 1158, it is said:

"Older Rule. In some of the older decisions it was held that the loss or injury raised no presumption of negligence. The bailee is not an insurer of the goods, and when they are lost or damaged, it was said that the law which never presumes any man negligent would rather attribute the loss to excusable causes. It was not enough for plaintiff to prove the loss or injury, but it was held that he must go further and must show that the same had occurred by defendant's negligence.

"Modern Rule. The rule adopted in the more modern decisions is that the proof of loss or injury establishes a sufficient *prima facie* case against the bailee to put him upon his defense. Where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all,

the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part."

This is but a substantial repetition of what was said in 3 Am. & Eng. Enc. Law (2d Ed.), p. 750, cited with approval in *Baehr* v. *Downey, supra.* In 10 C. J. p. 246, it was said:

"Actions Against Carrier as Warehouseman. The storage of the goods does not create a new contract, and the action against the carrier for negligence in keeping the goods at their destination may be based on the contract of shipment. As the action against the carrier as warehouseman is founded on negligence, the burden of proving negligence is on plaintiff, and also of showing that such negligence was the proximate cause of the loss or injury complained of. But as in the case of other bailments, the unexplained failure to produce and to deliver the goods is generally sufficient to make out a *prima facie* case for plaintiff. The custody of the goods being shown to have been in the carrier, and their loss or the failure to produce them being established, the burden of showing that there was no negligence, or at least of explaining the loss in a manner not *prima facie* negligent, is usually held to rest on the carrier. This burden, it has been said, is not merely the burden of going forward with the evidence, nor a shifting burden, but a burden of establishing before the jury the absence of negligence."

To the same effect see 6 Cyc. p. 462. Ruling Case Law (3 R. C. L. p. 150) thus states the rule:

"When considered from a general or abstract point of view the subject of presumptions and the burden of proof as to the care or negligence manifested by a bailee towards the property bailed presents serious difficulties. One great source of confusion is the different senses in which the phrase 'burden of proof' is employed. Thus, when the court declares that the burden of proof as to negligence rests on one of the parties it may mean merely that it is incumbent on him to go forward with the evidence on that ques-

tion, or it may mean that it is incumbent on him to establish negligence or the lack of it by a preponderance of the evidence. The difficulty arising from this source is one common to most questions regarding presumptions and burden of proof, and as the courts frequently fail to explain in which of the two senses the phrase is used, it is often necessary to determine that point from the context, while in some instances it is extremely difficult to determine the question at all. In those cases which discriminate between the use of the term 'burden of proof,' and attempt to give it an exact meaning, the general rule, at least in the United States, seems to be that where a bailor alleges and proves simply the delivery of the property to the bailee and the latter's failure to return it on demand, a *prima facie* case is made out against the bailee. The same is true if it is proved that the property was delivered to the bailee in good condition and was returned damaged in such a way as does not usually occur by the exercise of proper care, and in either case negligence will be presumed."

In *Davis & Son* v. *Hurt*, 114 Ala. 146 (21 South. 468), it was said by Chief Justice Brickell, speaking for the court:

"Warehousemen are of the class of bailees bound to ordinary diligence, and, of consequence, liable only for losses occurring from the want of ordinary care. When, however, upon demand made, the bailee fails to deliver goods entrusted to his care, or does not account for the failure to make delivery, *prima facie* negligence will be imputed to him; and the burden of proving loss without the want of ordinary care devolves upon him. *Seals* v. *Edmondson*, 71 Ala. 509; *Prince* v. *State Fair*, 106 Ala. 340 (17 South. 449, 28 L. R. A. 716); *Claflin* v. *Meyer*, 75 N. Y. 260 (31 Am. Rep. 467); *Boies* v. *Railroad Co.*, 37 Conn. 272 (9 Am. Rep. 347). The rule is founded in necessity, and upon the presumption that a party who, from his situation, has peculiar, if not exclusive knowledge of facts, if they exist, is best able to prove them. If the bailee, to whose possession, control and care, goods are entrusted, will not account for the failure, or re-

fusal to deliver them on demand of the bailor, the presumption is not violent that he has been wanting in diligence, or that he may have wrongfully converted, or may wrongfully detain them. Or if there be injury to, or loss of them during the bailment, it is but just, that he be required to show the circumstances, acquitting himself of the want of diligence it was his duty to bestow."

In the case of *Rustad* v. *Railway Co.*, 122 Minn. 453 (142 N. W. 727), it was said:

"Considerations of fairness put upon the warehouseman the burden of proving his own freedom from negligence. The goods are intrusted to him. He has charge and control of them. He determines the manner of keeping them. He is in possession of such evidence as there is as to the circumstances attending the loss. The bailor trusts the warehouseman and has no proof. It is not unjust to the warehouseman to require him to sustain the burden of proving its freedom from negligence. Where the burden of proof should rest 'is merely a question of policy and fairness based on experience in the different situations.' 4 Wigmore, Evidence, § 2486. We hold that when the liability of the carrier has become that of a warehouseman and the loss of the goods shipped is established, the burden of proof is upon it to show its freedom from negligence. This burden is not merely the burden of going forward with the evidence, nor a shifting burden, but a burden of establishing before the jury absence of negligence."

And the earlier case of *Geo. C. Bagley Elevator Co.* v. *Express Co.*, 63 Minn. 142 (65 N. W. 264), so far as in conflict with this statement was overruled.

In the case of the *Holt Ice, etc., Co.* v. *Arthur Jordan Co.*, 25 Ind. App. 314 (57 N. E. 575), the liability sought to be enforced was that of a warehouseman and the trial court, as here, had instructed the jury that under conditions similar to those in the instant case the burden was upon the defendant. It was there said:

"It seems the exact question presented by this instruction has not been decided in this State. Among the decisions in other jurisdictions there is a lack of uniformity. The general rule in negligence cases is that the complaining party must aver and prove negligence, and in a line of decisions this rule has been applied to a suit on a bailment contract, holding that as the case is founded on negligence the burden of proving it affirmatively rests throughout on the plaintiff. But the better reason underlies the doctrine, and it is supported by the weight of modern authority, that when a plaintiff has shown that the bailee received the property in good condition and failed to return it or returned it damaged, he has made out a *prima facie* case of negligence. An essential part of every bailment contract is the obligation to deliver over the property at the termination of the bailment. The bailor must prove the contract, the delivery of the goods to the bailee, and their return in a damaged condition. When he has done this the inference is deducible that the bailee is at fault and must answer, and especially is this true if the loss could not ordinarily have occurred without negligence. His failure to return the goods as delivered to him is inconsistent with what he agreed to do. The property was in his possession, under his care and oversight and away from that of the bailor, who, in most cases, could not know under what circumstances it was damaged. Generally speaking the *onus probandi* is upon the party who has to free himself from liability by proof of facts the knowledge of which is peculiarly within his own power rather than of his adversary."

After citing a considerable number of authorities, it was said:

"In some of the above cases the action was against the bailee for failure to deliver over the goods, and in others for delivering them over in a damaged condition, but the rule above stated is applied to both classes of cases alike."

In *Yazoo, etc., R. Co.* v. *Hughes*, 94 Miss. 242 (47 South. 662, 22 L. R. A. [N. S.] 975), it was said:

"It appears that the ancient rule was that, in all cases where a bailee was sought to be held, no presumption of negligence arises on account of the loss of the goods, and the burden of proof is always on the plaintiff to establish that negligence was attributable to the bailee. But, by the weight of modern authority, this doctrine is substantially modified. It may now be said to be established that, when a bailor shows that goods are delivered to his bailee in good condition, and are lost or destroyed or returned in a damaged condition, this fact creates a *prima facie* presumption of negligence; and it thereupon devolves upon the bailee to absolve himself from negligence."

The Colorado court, in the case of *Nutt* v. *Davison*, 54 Colo. 586 (131 Pac. 390, 44 L. R. A. [N. S.] 1170), thus announces the rule (we quote the syllabus):

"Where goods are delivered to bailee in good condition, and are returned injured or in defective condition, or not at all, a presumption of negligence on the part of the bailee at once arises, and the burden is upon him, if he would exonerate himself, to show due care."

See, also, *Miller* v. *Miloslowsky*, 153 Iowa, 135 (133 N. W. 357); *Wintringham* v. *Hayes*, 144 N. Y. 1 (38 N. E. 999); *Fleishman, Morris & Co.* v. *Railway*, 76 S. C. 237 (56 S. E. 974, 9 L. R. A. [N. S.] 519); *Hildebrand* v. *Carroll*, 106 Wis. 324 (82 N. W. 145); *Lichtenhein* v. *Railroad Co.*, 11 Cush. (Mass.) 70; *Cass* v. *Railroad Co.*, 14 Allen (Mass.), 448; *Thompson* v. *Railway Co.*, 59 Mo. App. 37; *American Brewing Ass'n* v. *Talbot*, 141 Mo. 674 (42 S. W. 679); *Marshall* v. *Andrews & Gage*, 8 N. D. 364 (79 N. W. 851); *Hoeveller* v. *Myers*, 158 Pa. St. 461 (27 Atl. 1081); Note 22 L. R. A. (N. S.) 975.

Running through some of the cases treating this subject will be found criticism of the use of the term "burden of proof." In this criticism some text and editorial writers join. Possibly the expression that

211—Mich.—22.

the "*onus* of exoneration" rests on the defendant would be more correct, technically speaking. But the effect is the same. In the instant case, as we have noted, the trial judge charged that the burden of proof was upon the plaintiff to establish every element of its case, including defendant's negligence, but that when certain facts were proven the burden was upon the defendant to show due care. We think this was the equivalent of using the more technical term "*onus* of exoneration," and was probably better understood by the jury.

While we are impressed that the tendency of our decisions leads to the adoption of the so-called "modern rule," the great weight of authority we think compels its approval. The bailee having the exclusive possession of the property has the exclusive means of showing what was done and what came of it. The charge in the instant case fairly submitted the issues in the case in a manner that could not have been misunderstood by the jury.

We find no reversible error and the judgment will be affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.