**GREENE et al. v. NEW YORK CENT. R. CO.**

Civ. A. No. 9292.

United States District Court
E. D. Michigan, S. D.

July 11, 1952.

Robert E. Plunkett, Ward & Plunkett, Detroit, Mich., for plaintiffs.

William A. Alfs, Detroit, Mich., for defendant.

LEVIN, District Judge.

The court has before it a motion for a new trial, a verdict of no cause for action having been entered at the conclusion of the trial.

A recital of the facts in the case is a necessary preliminary to a consideration of the grounds on which plaintiffs base their request for a new trial. The plaintiffs, who are husband and wife, brought this action for damages arising from the loss of two bags containing clothing, furs and jewelry having a stipulated value of $52,701. Mrs. Greene, her daughter and two friends planned a transcontinental trip from California by train. They came as far as Chicago on the "Super-Chief," advertised as a luxury train, and there transferred to the "Twilight Limited" enroute to the Detroit station. The latter train is owned and operated by the defendant, New York Central Railroad Company.

The bags in question were not checked; Mrs. Greene kept them with her but gave no notice of their value either by word or behavior to any agent of the defendant. Shortly after boarding the "Twilight" she examined the bags and found that the jewelry and other valuables were there. Although the exact time is disputed it is clear that shortly before reaching Detroit Mrs. Greene allowed a porter to take the bags from her compartment to the platform of the train, and a few minutes before the train stopped at Detroit the porter discovered that the bags were missing.

The porter testified that although the bags had been placed next to an open door they had been wedged in a manner that ensured their safety. The tracks were later checked for several miles outside of Detroit but no trace of the missing bags was found. The bags were left unattended while the porter took care of his other duties which included the handling of baggage for the other passengers in the car. Efforts to notify the conductor or other officials on the train of the loss failed because the door to the next car, the diner, was locked, but testimony showed that as soon as the train pulled into the station the porter notified the railroad police of the loss.

In addition to the porter, whose testimony related directly to the issue of due care, the defendant placed on the stand a series of witnesses, passengers and employees on the trains in which Mrs. Greene and her party traveled, whose composite testimony implied theft. Mrs. Greene was identified as a passenger who had been conspicuous because of the amount and quality of the jewelry she wore; resemblances between police pictures of "well-known jewel thieves" and certain passengers on the "Super-Chief" and the "Twilight" were indicated; dining car employees told of two men who came through the diner toward Mrs. Greene's car shortly before the train arrived in Detroit, of two men carrying two light-colored bags hurrying through the diner away from

Mrs. Greene's car, of the impossibility that any railway employee could have locked the diner door before the train came to a stop in Detroit, and of surprise on finding the door already locked when, in the station, the duty of locking the door was to be performed; a taxi starter told of a man, burdened with two large light-colored bags of a kind usually carried by women, who hurried into the station minutes ahead of the remainder of the "Twilight" passengers and speeded away in one of the waiting taxis.

The first basis for a new trial urged by plaintiffs is that the jury was erroneously instructed as to the burden of proof, the court having instructed the jury that the burden was, throughout the trial, on the plaintiffs.

█ The legal implications of the factual situation in this case are different from those arising in cases in which checked baggage is involved. In the latter cases, whenever loss occurs, a limited liability is imposed, regardless of fault, on the carrier.

█ An ordinary bailment for the mutual benefit of the parties was created when Mrs. Greene entrusted her luggage to the defendant's porter, Blair v. Pennsylvania Greyhound Lines, 275 Mich. 636, 267 N.W. 578, and the liability thereby imposed on the defendant bailee is that of ordinary care. Knights v. Piella, 111 Mich. 9, 69 N. W. 92. Under the Michigan law a prima facie case is established when the bailor has shown the existence of an ordinary bailment, together with a failure to return the things bailed at the stipulated time or on demand. Baehr v. Downey, 133 Mich.

163, 94 N.W. 750; Thomas Canning Co. v. Pere Marquette Railway Co., 211 Mich. 326, 178 N.W. 851; Douglas Shoe Co. v. Pere Marquette Railway Co., 241 Mich. 297, 217 N.W. 12. Thus, had both plaintiffs and defendant rested after a showing of the basic facts that (1) Mrs. Greene, one of the plaintiffs, was a passenger for hire on a train operated by the defendant, (2) Mrs. Greene delivered two bags to a porter, an agent of the defendant, (3) the agent took those bags, as ordinary baggage, into his custody, and (4) the bags were never returned to Mrs. Greene,—a presumption would have operated requiring a judgment for plaintiffs. At that point the burden of going forward with the evidence was on the defendant.

█ Plaintiffs argue, however, that not only the burden of proceeding with the evidence, but the burden of proof to absolve the defendant from liability shifts from bailor to bailee at that point. That such is not the law of Michigan is clearly stated in Douglas Shoe Co. v. Pere Marquette Railway Co., supra. Some confusion has arisen in the Michigan law through failure to distinguish between the burden of proof and the burden of going forward with the evidence. An examination of the cases will show, however, that whenever evidence of the bailee's due care was introduced, either by direct proof or by an explanation negating negligence, it was held that the burden of proof never left the bailor.[1] The court's instruction was, therefore, a correct statement of the Michigan law.

█ Plaintiffs' second contention is that all of the testimony introduced by defendant to show the possibility of theft

---

1. Two early cases do not speak of the burden of proof and the burden of proceeding but simply of the "onus of exoneration" that falls upon the bailee once the bailor's prima facie case has been presented. Baehr v. Downey, 133 Mich. 163, 94 N.W. 750; Fraam v. Grand Rapids & Indiana Railway Co., 161 Mich. 556, 126 N.W. 851, 29 L.R.A.,N.S., 834. The operation of this principle is not made clear in those opinions, but both cases rely on Knights v. Piella, 111 Mich. 9, 69 N.W. 92, in which the rule as used in the present case is clearly stated to

be the law of Michigan. Plaintiffs cite Thomas Canning Co. v. Pere Marquette Railway Co., 211 Mich. 326, 178 N.W. 851, in which a lengthy discussion of the problem appears. However, the "modern rule" espoused in that case is the rule adopted here as is clear not only from that opinion but from two later cases, Pennsylvania Railroad Co. v. Dennis' Estate, 231 Mich. 367, 204 N.W. 89, and Douglas Shoe Co. v. Pere Marquette Railway Co., 241 Mich. 297, 217 N.W. 12.

was so uncertain and speculative that it should have been stricken. It is true that the evidence presented was far from conclusive. On the other hand, an explanation of the loss is an important element of the defense. Theft is an excuse that does not necessarily imply negligence, Knights v. Piella, supra, and evidence of theft is enough to overcome the presumption of lack of due care that attaches to proof of an unexplained failure to return a thing bailed. Douglas Shoe Co. v. Pere Marquette Railway Co., supra. In a bailment case an excuse for failure to return is material only because it relates to the basic duty of ordinary care by showing how the loss could have occurred in spite of the exercise of due care. In the case at bar the defense rested not on proof of theft per se but on direct evidence of the exercise of ordinary care together with a feasible explanation of how the loss could have occurred even though the required degree of care was used. In view of the nature of the defense, the testimony was properly admitted. The probative value of the evidence was for the jury to decide, and to have excluded this evidence would have been an invasion of the jury's province as it has been delineated in recent decisions. See Pennsylvania R. R. v. Goldie, 6 Cir., 182 F.2d 9, and cases cited therein.

■■■ Plaintiffs object to the instruction that if liability were found it could extend only to the value of ordinary baggage, defined, substantially, as that baggage which would be carried by a reasonably prudent woman in Mrs. Greene's circumstances, because that was all that was accepted for bail by the defendant. Although this instruction played no part in the verdict actually given in this case, I think it is an accurate statement of the law. New York Cent. & H. Railroad Co. v. Fraloff, 100 U. S. 24, 25 L.Ed. 531.

Plaintiffs' last ground for a new trial is a claim of error in answering a question sent to the judge by the jury after two hours of deliberation. The question read: "Could the fact of the diner doors being locked be considered as a contributing factor of due care in handling the baggage?" The question was clarified by the foreman: "There seems to be some doubt as to whether the dining room door, the door of the diner being locked, would have any contributory factor as to negligence in handling the baggage. Is there a law, is there anything concerned in that particular factor that would contribute anything to that particular case? Are the doors supposed to be open?"

The court answered: "The answer of the court is that there is no law with which we are here concerned which has anything to do with the keeping of the doors of the diner open or closed. May I say that there is no evidence here as to who closed the doors,—how the doors were closed; and in my view the fact that the doors were closed or open is not an element which will help you in determining whether the New York Central, the defendant in this case, exercised ordinary care in the handling of this baggage * * *."

■■■ The answer was a clarification of the law in an area in which the jury was confused. To the extent that it constituted a comment on the evidence and the facts in the case it was not an error. Federal judges may comment on evidence, and the answer to this question, as well as all other portions of the charge, was given subject to the statement at the beginning of the charge that the jurors are the sole triers of the facts, emphasizing that "* * * that is a province which I may not invade. If I have said anything during the trial, or if I should say anything during this charge from which you gained or gain the impression that I have a view one way or another as to how this case ought to be decided, you must get that out of your minds." See Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968. The granting of a new trial on the basis of such an answer is within the discretion of the court. In my opinion the answer did not prejudice the plaintiffs' position or produce an injustice in this case.

The motion for a new trial is denied.